### In the Matter of ANONYMOUS, an Attorney.

**In the Matter of PETITIONER # 1, Petitioner # 2, Petitioner # 3, Petitioner # 4, Petitioner # 5, Petitioner # 6, and Petitioner # 7, Petitioners,**

v.

**GRIEVANCE COMMITTEE FOR the SECOND AND ELEVENTH JUDICIAL DISTRICTS; Supreme Court of the State of New York, Appellate Division for the Second Judicial Department; Robert Abrams, Attorney General for the State of New York, Respondents.**

No. 86 CV 3106.

United States District Court,
E.D. New York.

Dec. 12, 1986.

not solely dependent on the efforts of the promoter." *Bender, supra,* 632 F.Supp. at 501.

Heit & Grant, New York City, N.Y., for petitioners.

Robert Abrams, Atty. Gen. of the State of N.Y. (Debra Marcus, Asst. Atty. Gen., of counsel), for respondents Abrams and Appellate Div.

Robert N. Strans, Frank A. Finnerty (Robert J. Saltzman, of counsel), for respondent Grievance Committee.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

### Facts

This is a petition for a writ of habeas corpus. 28 U.S.C. § 2254. Petitioners are secretaries at the firm of a Queens, New York lawyer who, along with three of his associates, was indicted in Kings County on charges of, among other things, conspiracy and fraud. That attorney was later convicted of twenty-six crimes and suspended from the practice of law.

In December 1984 and January 1985, the secretaries were subpoenaed and testified before a Kings County grand jury under a grant of transactional immunity conferred pursuant to New York Crim.Proc.Law § 190.40(2). The questioning focused on the practice of the attorney who was con-

victed and is now suspended (attorney A); all but one of the petitioners recollect being asked some peripheral questions about one of the associates (attorney B). Attorney B is now the subject of a disciplinary proceeding conducted by the respondent Grievance Committee.

Petitioners were subpoenaed to testify before the Grievance Committee, and appeared in March and April 1985. Each refused to answer the questions propounded, stating that to do so might be incriminating and that the transactional immunity previously conferred for their grand jury testimony did not give them similar immunity for the testimony to be given at the disciplinary proceeding. Despite the warning that a continued refusal to answer questions before the Grievance Committee could result in contempt penalties, petitioners did not change their position.

The Grievance Committee responded by moving in the Appellate Division, Second Department, for the imposition of contempt sanctions. That court, by Order dated September 11, 1985, referred the matter back to the Honorable Harry J. Donnelly, the Special Referee presiding over the disciplinary proceeding. The Appellate Division reminded the Special Referee to direct the witnesses to answer, a formality that had not been followed when the petitioners first appeared before the Grievance Committee. The Appellate Division told the Referee that if petitioners refused to testify, he was to submit a report and findings regarding their possible contempt.

When the disciplinary proceeding resumed in December 1985, the Special Referee formally ordered petitioners to testify. When they refused, they were held in contempt, but were offered the opportunity to purge themselves the following week. None did so.[1]

On June 6, 1986,[2] the Appellate Division issued an order holding each petitioner in contempt and ordering her to pay a fine of $250 and to go to prison until she testified. The order stated simply that the secretaries "had already been granted full transactional immunity by the Grand Jury pursuant to CPL § 190.40(3) concerning the same subject matter and thus [their] invocation of the privilege against self-incrimination had no basis in law."[3]

Petitioners then sought and received from the New York Court of Appeals a stay of enforcement of the Appellate Division order pending appeal. The Grievance Committee then moved the Court of Appeals to vacate the stay and dismiss the appeal for lack of jurisdiction. It did so in its order of September 4, 1986, stating only that the "appeal taken as of right [is] dismissed, without costs, upon the grounds that the order appealed from does not finally determine the proceeding within the meaning of the Constitution and no substantial constitutional question is directly involved."

After the vacatur of stay, petitioners filed in this Court for a writ of habeas corpus. On September 22, 1986 this Court stayed the Appellate Division order pending determination of the petition.

### Discussion

#### A. *Exhaustion*

Respondents argue that the petition should be dismissed for failure to exhaust state remedies. Petitioners' appeal of the Appellate Division order to the Court of Appeals was brought as of right pursuant to New York C.P.L.R. § 5601(b), which permits appeals as of right when a constitu-

---

**1.** Four of the petitioners appeared on December 23, 1985 and invoked the privilege against self-incrimination. Petitioners' attorney reported that petitioner #1 and petitioner #3 were attending their grandfather's funeral or wake and that petitioner #2 was ill.

**2.** During the interval between the December refusal to testify and the June contempt order, the trial of attorney A, who was subsequently convicted and suspended, took place. Two petitioners testified for the defendant and one did so for the prosecution. This testimony had nothing to do with attorney B.

**3.** The Appellate Division gave petitioners one more chance to purge themselves of the contempt, but they refused.

tional question is involved. Respondents suggest that petitioners can try again, pursuant to C.P.L.R. § 5602, which permits applications for leave to appeal to the Court of Appeals. Respondents contend, without support, that because this avenue is still available, the petition should be dismissed as unexhausted, *see* 28 U.S.C. § 2254(b).

The exhaustion requirement is principally designed to further federal/state comity by affording a state court an opportunity to correct a federal constitutional violation before a state conviction is upset by a federal habeas court. *Rose v. Lundy*, 455 U.S. 509, 518–19, 102 S.Ct. 1198, 1203–04, 71 L.Ed.2d 379 (1982). These concerns "are satisfied if the State was given a fair *opportunity* to address the federal constitutional issue." *Toney v. Franzen*, 687 F.2d 1016, 1021 (7th Cir.1982) (emphasis in original). Accordingly, "[p]etitioners are not required to file 'repetitious applications' in the state courts. Nor does the mere possibility of success in additional proceedings bar federal relief." *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971). "[A petitioner] need only fairly present his claims to the state courts once." *Kellotat v. Cupp*, 719 F.2d 1027, 1029 (9th Cir.1983) (citing *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971)).

■ Petitioners here have done so. There is no doubt, and respondents do not dispute, that the appeal as of right present-

ed the fifth amendment issue to the Court of Appeals. Accordingly, the state's highest court has had an opportunity to address the alleged constitutional error. *See Dean v. Smith*, 753 F.2d 239, 241 n. 4 (2d Cir. 1985) (exhaustion doctrine does not require all avenues of state review to be exhausted, as long as petitioner presents his claim to state court having authority to hear the claim and grant the relief sought). Moreover, because the Court of Appeals ruled that the appeal presented no substantial constitutional issue,[4] it is difficult to see what would have been gained by again raising the identical issue and asking the court to hear it in its discretion.

Respondents next suggest that because the instant petition contains exhausted and unexhausted claims, it must be dismissed under *Rose v. Lundy, supra*, which requires dismissal of such "mixed petitions". They base this argument on the fact that petitioners raised in this court an issue— fear of a prosecution for perjury[5]—that was never raised in the state courts.

■ It is crystal clear, however, that the perjury matter was raised not as a claim, but merely as an argument in support of a claim. From the inception of the disciplinary proceedings petitioners have advanced but one claim: that their compelled testimony before the Grievance Committee would violate their fifth amendment privilege against self-incrimination. That they chose to illustrate that claim with different examples in various forums does not alter

4. The Court of Appeals also ruled, without explanation, that the order appealed from was not final. This holding is puzzling, in that the Appellate Division ordered that petitioners pay fines and go to jail if they did not purge their contempt within ten days of the June 6, 1986 order. None did so. Accordingly, when they appealed to the Court of Appeals on June 23, 1986, the Appellate Division order was apparently final.

5. Respondents point out that in any event the fear of a perjury indictment does not justify a refusal to testify. They cite *United States v. Papadakis*, 802 F.2d 618, 621 (2d Cir.1986), in which the court held if the defendant, who had been granted use and derivative use immunity, had

testified truthfully, his testimony would not have been incriminating with respect to the crime of perjury ... Had [he] testified untruthfully, his testimony, although incriminating, would not have been obtained in violation of his constitutional rights. The Fifth Amendment does not shield witnesses from the adverse consequences flowing from their untruthful statements.

Petitioners contend that because *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires this Court to follow state law, *Papadakis* should be ignored. This argument is frivolous. *Erie* governs only in diversity cases, *see id.* at 71, 58 S.Ct. at 819, and has no application on a petition for a writ of habeas corpus.

the fact that each body ruling on the case has been amply "alerted to the constitutional nature of [the] claim," *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 192 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). As long as the "ultimate constitutional question" is presented to the state court, a petitioner has exhausted his claim even if he makes in the federal court an argument not raised earlier. *Id.* n. 4.

Accordingly, I hold that petitioners have exhausted their state remedies.

### B. *Presumption of Correctness*

Respondents argue that the Appellate Division's determination that petitioners' grand jury immunity covered their contemplated Grievance Committee testimony is a finding of fact entitled to a presumption of correctness under 28 U.S.C. § 2254(d), which provides, in relevant part:

> In any proceeding instituted in a Federal court by an application for a writ of habeas corpus ... a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—[that one of eight enumerated exceptions applies.]

There are several problems with respondents' assertion. First, they point to no proceeding that can be regarded as a hearing; in fact, there is nothing in the record to suggest that the Appellate Division undertook any inquiry into the merits of any factual issue. Second, the Appellate Division's order said only that the grand jury's granting of transactional immunity meant that petitioners' invocation of the fifth amendment privilege "had no basis in law." There is no indication of the facts upon which the court may have relied. Thus, to the extent the basis of the decision cannot be discerned, the order cannot be regarded as a "written finding, written opinion or other reliable and adequate written indicia" of a factual determination.

Finally, as a matter of common sense the Appellate Division order cannot constitute a finding of fact. Even assuming that that court reviewed the minutes[6] and determined the scope of the immunity conferred by petitioners' grand jury testimony, there was no examination of the questions to be propounded by the Grievance Committee.[7] Thus, the court could not have compared the two inquiries and made a factual determination as to their relative scopes. The Appellate Division conclusion that the grand jury immunity removed any basis for invoking the privilege before the Grievance Committee must therefore have been reached as a matter of law.

■ For these reasons, I find that the § 2254(d) presumption of correctness does not apply. I turn now to the merits of petitioners' application.

### C. *The Fifth Amendment Claim*

New York Crim.Proc.Law § 50.20 provides, in relevant part:

6. Respondents assert, upon information and belief (Affirmation of Robert J. Salzman in Opposition to Petition for a Writ of Habeas Corpus ("Salzman Aff.") ¶ 8, at 6), that the Appellate Division reviewed the grand jury minutes in determining that petitioners had received transactional immunity before the grand jury (a fact that petitioners do not dispute) and that that court "likely" also did so in determining that the grand jury investigation encompassed the matters into which the Grievance Committee was inquiring (Respondents' Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus ("Respondents' Memo") at 8). These assumptions are unwarranted. The Appellate Division did not suggest in its order, nor is there any evidence in the record, that the court in fact examined the grand jury minutes.

7. Respondents do not dispute that no list of questions to be asked at the disciplinary proceeding was proffered (see Salzman Aff. ¶ 8, at 6), yet they ask this Court to regard as a finding of fact the Appellate Division conclusion that the Grievance Committee inquiry would concern "the same information" as the grand jury investigation.

1. Any witness in a legal proceeding, other than a grand jury proceeding, may refuse to give evidence requested of him on the ground that it may tend to incriminate him and he may not, except as provided in subdivision two, be compelled to give such evidence.

2. Such a witness may be compelled to give evidence in such a proceeding notwithstanding an assertion of his privilege against self-incrimination if:

    (a) The proceeding is one in which, by express provision of statute, a person conducting or connected therewith is declared a competent authority to confer immunity upon witnesses therein; and

    (b) Such competent authority (i) orders such witness to give the requested evidence notwithstanding his assertion of his privilege against self-incrimination, and (ii) advises him that upon so doing he will receive immunity.

Neither side has cited any statute declaring the Grievance Committee to be an authority competent to confer immunity. It thus appears that petitioners' compelled testimony would violate their constitutional right not to incriminate themselves. Respondents counter that the immunity already conferred on petitioners by virtue of their grand jury testimony will also protect them if their Grievance Committee testimony should be incriminating. That is the precise question for determination.

New York Crim.Proc.Law § 190.40 provides, in relevant part: "Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him.... A witness who gives evidence in a grand jury proceeding receives immunity ..."

The courts have interpreted this immunity broadly. Immunity conferred pursuant to § 190.40 "not only protects the witness from subsequent use of his testimony, as is required by the Federal Constitution, but

also absolves him from all criminal liability, penalty or forfeiture for any 'transaction ... concerning which he gave evidence.'" *People v. Rappaport,* 47 N.Y.2d 308, 313, 418 N.Y.S.2d 306, 309, 391 N.E.2d 1284, 1287 (quoting New York Crim.Proc.Law § 50.10(1)), *cert. denied,* 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979); *see Shargel v. Fenton,* 459 F.Supp. 700, 704 (S.D.N.Y.1978) (compelled testimony of immunized grand jury witness cannot be used by prosecutorial authorities in any respect and cannot lead to infliction of criminal penalties on witness) (quoting *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972)), *aff'd,* 596 F.2d 42 (2d Cir.1979), *vacated on other grounds,* 445 U.S. 922, 100 S.Ct. 1305, 63 L.Ed.2d 754 (1980).

Under New York criminal practice no formal document as to the scope of the immunity is issued. Rather the contours of the immunity are defined by the questions put to the witness. Thus, each petitioner possesses "full transactional immunity for any topic discussed by the witness within the scope of the [grand jury] proceeding." *People v. Chin,* 67 N.Y.2d 22, 33 n. 4, 499 N.Y.S.2d 638, 646 n. 4, 490 N.E.2d 505, 513 n. 4 (1986). Because those proceedings are secret, however, there is no evidence in the record as to what those topics are.[8] Accordingly, as a practical matter, there can be no assurance that the Grievance Committee will not seek information on other topics for which petitioners have not been immunized.

Respondents state that the scope of the disciplinary proceeding will be narrower than that of the grand jury investigation (see Respondents' Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus at 14). To the extent this assertion can be regarded as a representation on the part of the Grievance Committee that it will not stray into areas into which the grand jury did not inquire, it is an empty promise: respondents have no way of

---

8. Neither side has given this Court any indication that the grand jury minutes are available. If they were, petitioners could theoretically testify before the Grievance Committee and invoke

the privilege on a question-by-question basis, as warranted, after a comparison of the grand jury and Grievance Committee inquiries.

knowing what questions were answered by petitioners in the grand jury.[9]

Similarly, respondents' assurance that petitioners' testimony at the disciplinary proceeding will not subsequently be used against them by a District Attorney is of little value, unless the Grievance Committee somehow speaks for the Kings County District Attorney in this matter.[10] (There is also the unmentioned matter of other prosecutors.)

■ I conclude that petitioners have the right to invoke the privilege against self-incrimination in the Grievance Committee proceeding, and that the order compelling them to testify violates the fifth amendment to the United States Constitution. Accordingly, the petition for a writ of habeas corpus is hereby granted.

SO ORDERED.

---

9. Respondents contend that the disciplinary proceeding will necessarily be more restrictive in scope than the grand jury inquiry because the Grievance Committee is empowered to investigate only acts of professional misconduct by lawyers, whereas a grand jury can look into any criminal activity. This argument is specious. Clearly the subject matter of a grand jury investigation does not encompass that of a disciplinary proceeding if the target of the former is Attorney A and the target of the latter is Attorney B.

10. Respondents also suggest that even if the Appellate Division's conclusion is incorrect, it would bar subsequent prosecution of the petitioners. Because the District Attorney was not a party to the litigation, however, it is far from clear that the decision would bind her office. In any event, to force petitioners first to give up their privilege against self-incrimination and then to argue the preclusive effect of an order that they believe to be invalid would be to safeguard inadequately their constitutional rights.