Jose VAZQUEZ, Petitioner,

v.

Charles J. SCULLY, Superintendent, Greenhaven Correctional Facility, Respondent.

No. 87 Civ. 6864 (CHT).

United States District Court, S.D. New York.

Sept. 15, 1988.

William M. Kunstler, Ronald L. Kuby, New York City, for petitioner.

Robert M. Morgenthau, Dist. Atty., New York City, for respondent; Deirdre Roney, Marc Frazier Scholl, Asst. Dist. Attys., of counsel.

## OPINION

TENNEY, District Judge.

Jose Vazquez ("Vazquez") has petitioned for a writ of habeas corpus (the "Petition"), pursuant to 28 U.S.C. § 2254 (1982), against Greenhaven Correctional Facility Superintendent Charles J. Scully ("Scully"). As called for in Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, Scully has filed an answer and provided a transcript of the state trial proceedings. For the reasons set forth in this memorandum opinion and order, the court finds that no evidentiary hearing is required and dismisses the petition.

## BACKGROUND

During the early morning hours of Sunday, February 23, 1976 at the Casablanca nightclub in New York City, Freddie Vazquez, brother of the petitioner, was involved in an argument in the nightclub's restroom with Robert Tirado ("Tirado") the owner of the Casablanca, and Arthur Diamond ("Diamond"), a club bouncer. Freddie Vazquez left the restroom and conversed with his brother, Jose, the petitioner. Immediately following this conversation, petitioner drew a handgun and shot both Diamond and Tirado. Diamond was killed and Tirado was seriously wounded. After the shooting, Freddie, petitioner Jose Vazquez, and another brother Thomas Vazquez, also present at the nightclub, departed from the Casablanca.

Petitioner presented no witnesses and was convicted of both murder and attempted murder in the second degree after a jury trial in Supreme Court of the State of New York (B. Roberts, J.) on January 31, 1978. This conviction followed an earlier trial in February 1977 which concluded in a hung jury and mistrial (Goldman, J.). Judgment was entered on March 3, 1978. Petitioner is currently serving concurrent terms of 15 years to life on the murder conviction and 10 to 20 years on the attempted murder count. The Appellate Division, First Department affirmed the conviction without opinion. 78 A.D.2d 1019, 435 N.Y.S.2d 424 (1980). Leave to appeal to the New York Court of Appeals was denied. 52 N.Y.2d 838, 437 N.Y.S.2d 1042, 418 N.E.2d 691 (1980). In April 1980, petitioner filed a *coram nobis* petition under N.Y.Crim. Proc.L. § 440.10 (McKinney 1983). On June 5, 1980 the Supreme Court, New York

County, denied the petition. Leave to appeal to the Appellate Division, First Department was denied on September 16, 1980.

Vazquez's petition alleges (1) that he was denied his Sixth Amendment right to effective assistance of counsel by his attorney's failure to move for a mistrial and by his failure to consult with petitioner about whether such a motion should be made; and (2) that he was denied his Fifth Amendment right to due process of law by the admission of highly prejudicial and inadmissible evidence of his past criminal record and by the failure of the trial court to order a mistrial on its own motion after the admission of the prejudicial evidence. Petitioner also makes certain allegations not heretofore raised. He now alleges that he had retained trial counsel for his first trial and that by the time of the second trial he had exhausted his funds and that counsel unsuccessfully attempted to withdraw. Petition ¶ 6. There is no record of any attempt by counsel to withdraw. He further alleges that:

> Counsel's failure to move for a mistrial, and to consult with petitioner, was based, in whole or in part, by a desire to avoid having to try the case for a third time, as petitioner had no funds to remunerate counsel.

Petition, Third Claim ¶ 19.

## DISCUSSION

The events which precipitated the petitioner's claims occurred for the most part after the commission of the crimes and in the course of the initial police investigation. Tirado, who had been seriously wounded, had been taken to a hospital where he was interviewed by Detective Joseph White ("White") on two occasions on the day following the crime. The first occasion was in the early morning hours of February 22, 1976 around 5:30 a.m. when White, after first going to the Casablanca, went to the hospital where he obtained information from Tirado. Thereafter, he returned briefly to the vicinity of the Casablanca to check vehicles and search for the weapon. He then returned to his office. After leaving the office he went to the residence of Thomas Vazquez, petitioner's brother, and talked with Thomas Vazquez's wife.

At the trial the following questions and answers were exchanged regarding White's investigation subsequent to talking with Mrs. Vazquez:

Q  After you had this discussion, what did you next do?

A  We went back to the Fourth Homicide Zone Office, and we did Police Department record checks. We checked the record of a Jose Vasquez, Thomas Vasquez, and Freddie Vasquez.

Q  You checked certain [P]olice Department files to determine whether in fact there was a record?

A  Yes, sir.

Trial Transcript ("Tr.") at 424.

Defense counsel and prosecutor conferred with the trial judge out of the presence of the jury regarding the above testimony. Defense counsel moved for a mistrial which the court denied stating there could be no possible prejudice to the defendant because there was no mention of any criminal record. Tr. 428, 429.

Nevertheless, when the jury returned, the trial judge elicited further testimony:

Q  Officer, what record did you check?

A  We checked the telephone directory, we checked the Motor Vehicle Bureau records with regard to vehicle ownership, we checked the Motor Vehicle Bureau records in respect to operating licenses.

Q  And the effort was to obtain addresses of the Vasquez'?

A  Yes, sir.

Q  Of Jose Vasquez, Wilfredo Vasquez and Thomas Vasquez?

A  Yes, sir.

Q  Was any information that you obtained during the course of checking the records in any was utilized at that particular time?

A  No, sir, not at that time. It wasn't productive.

Q  In other words, your check of the records was not productive at all?

A   That's correct, sir.

Tr. 436–37.

The trial continued with the prosecutor examining White. This involved the second occasion when White visited Tirado at the hospital. Earlier, White had testified that he went back to the hospital in the afternoon of February 22, 1976. The testimony at this stage had been interrupted by defendant's motion for a mistrial because of the reference to police department record checks referred to above. The later testimony is as follows:

> Q   Detective Rieck (sic), I believe we were at the point when you said sometimes (sic) you returned back to Roosevelt Hospital?
>
> A   We spoke to Mr. Tirado who was in a room at the hospital at that time, and he identified for us the photograph of Jose Vasquez.

Tr. 437.

Defense counsel immediately asked to approach the bench and a spirited colloquy concerning the photograph occurred out of the presence of the jury. The trial subsequently resumed and the trial judge instructed the jurors to disregard any reference to what was shown to Tirado. Tr. 462–63.

The trial judge, during a recess, told defense counsel that if he wished to move for a mistrial, the court would grant it. Tr. 473–75. Defense counsel declined to so move. Tr. 475.

Petitioner's contention is that "White's testimony that he returned to the station house to check records there, followed by his description of showing Jose Vazquez's photograph to Robert Tirado at the hospital, could have been interpreted by the jury to mean that Vazquez was a man with a prior criminal history, well known to the police, whose files contain a mug shot of petitioner."[1]   Petitioner's Memorandum of Law at 8. It is this evidence which petitioner characterizes as highly prejudicial and inadmissible evidence.

*The Exhaustion Requirement*

Before a federal district court can review a state trial proceeding under 28 U.S.C. § 2254, the petitioner must exhaust all available state remedies. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981). Any petition containing both exhausted and unexhausted claims must be dismissed. *Holland v. Scully,* 797 F.2d 57, 64 (2d Cir.), *cert. denied,* 479 U.S. 870, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986). The exhaustion principle requires that a petitioner seeking a writ alleging his constitutional rights were violated at trial, must have presented the state courts with the grounds for such allegations and afforded such courts the opportunity to remedy the alleged defect. *Dean v. Smith,* 753 F.2d 239, 241 (2d Cir.1985); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). *See also* 28 U.S.C. § 2254(c) (providing that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented").

In the instant case the state maintains that Vazquez has not exhausted the remedies available in the state courts because his petition contains a claim not presented to the state courts, more particularly *factual* allegations relating to his claim of ineffective assistance of counsel that were never presented to the state courts. Petitioner alleges that by the time of his second trial he had exhausted his funds and that his counsel unsuccessfully attempted to withdraw. Petition ¶ 6. He further alleges that his counsel's failure to move for a mistrial or to consult with petitioner was based in whole or in part on counsel's desire to avoid a third trial because petitioner was out of funds (and presumably counsel would not receive fair remuneration). *Id.* ¶ 19.

---

**1.** The jury reasonably could have believed the photograph of petitioner had been obtained in the course of White's visit to the home of Thomas Vazquez.

■ If a petitioner for a writ has not set forth in the state court all of the *essential factual* allegations asserted in his federal petition, the state court has not had a fair opportunity to rule on the claim.[2] *Daye,* 696 F.2d at 191. Furthermore, although improperly characterized by petitioner as an additional claim, the factual allegations are intertwined with petitioner's claim of inadequate representation of counsel, a claim otherwise exhausted. *Reverend Grady v. LeFevre,* 846 F.2d 862, 865 (2d Cir.1988). In the instant case petitioner's allegation of a conflict of interest on the part of his counsel, if proven, would relieve petitioner of the burden of proving prejudice arising from counsel's deficient performance. *Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980).

Faced with the likelihood of dismissal of the petition for failure to exhaust state remedies in connection with the claim of inadequate representation, petitioner has moved to strike ¶ 19 from his petition. Although the record of this case in the trial and appellate courts furnishes little, if any, support for the claim of conflict of interest, *Rose v. Lundy* recognizes the possibility that an unexhausted claim may be voluntarily withdrawn. Petitioner's motion to strike is therefore granted, and the court will consider the remaining claims which have concededly been exhausted in the state court. Since the claim of conflict of interest has been stricken at petitioner's request, the court *sua sponte* will strike the allegation of ¶ 6 of the petition as irrelevant to the exhausted claims.

*Ineffective Assistance of Counsel*

■ The first claim of Vazquez is that he was denied effective assistance of counsel because of the failure of his counsel to move for a mistrial and counsel's failure to consult with petitioner regarding such a motion.

Directing ourselves to the failure to move for a mistrial, a claim of ineffective assistance of counsel, such as to require reversal of a criminal conviction, requires that it be established that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to establish that the defense was prejudiced, the petitioner must affirmatively demonstrate that there is a reasonable probability that were it not for counsel's errors, the result of the proceeding would have been different. *Id.* at 693–94, 104 S.Ct. at 2068; *United States v. Ditommaso,* 817 F.2d 201, 215 (2d Cir. 1987). The court has carefully reviewed the trial proceedings and concludes that petitioner's counsel performed reasonably and effectively under prevailing professional norms. He succeeded in excluding from the trial evidence far more prejudicial than the prejudice alleged herein. He conducted a vigorous defense by cross-examination and arguments addressed against the admissibility of damaging evidence. He sought and obtained curative instructions by the trial judge. Furthermore, he had already succeeded in obtaining a non-verdict in the first trial.

It seems quite clear that petitioner's counsel made a strategic choice not to move for a mistrial (which motion he had been advised would be granted) and, if his client were convicted to make the matter of the search for a "criminal" record and of the photo identification a basis for appeal. As petitioner's counsel stated to the trial judge:

I wish to make no motion for a mistrial. So the record is clear, I repeat, if there is a mistrial, it's not on my motion. Let me say a little more. If it turns out that this court feels there is error in this

---

**2.** Petitioner claims that ¶ 19 of his petition is an "argument" in support of his claim of inadequate representation and does not change an exhausted claim into an unexhausted claim, citing *Matter of Anonymous,* 650 F.Supp. 551, 554 (E.D.N.Y.1986). That case is distinguishable, since it involved an argument based on facts already before the court. In the instant case the allegations of conflict of interest is based on facts not presented to the state courts. *See United States v. Herold,* 349 F.2d 372 (2d Cir. 1965).

trial, then the Appellate Division will deal with that error.

Tr. 472–73.

He moved successfully for a *Wade* hearing on the photograph showed by White to Tirado. The photograph was never offered into evidence and the jury was instructed to forget the brief testimony regarding it. The essence of petitioner's claim is that his counsel, after the introduction of the testimony regarding the photograph, did not renew the prior motion for a mistrial made at the time of the testimony regarding the search of the "records." It is clear that he sought to obtain a *sua sponte* grant of a mistrial by the trial court, failing which he would let the Appellate Division deal with the matter. That the appeals court did deal with it, but unfavorably to petitioner, does not change trial tactics into deficient performance by counsel. Furthermore, as will be developed hereinafter, petitioner has not demonstrated a reasonable basis for concluding that the exclusion of the allegedly prejudicial testimony would have produced a different result in the trial.

█ Petitioner also claims that his counsel should have conferred with him before deciding whether or not to move for a mistrial. Other than petitioner's allegation, there is no evidence that petitioner was not consulted by his counsel before the decision not to move for a mistrial was made. The trial court made it clear that the motion would have to be made by both petitioner and counsel, and it would therefore appear likely that there was consultation between them. However, even if there were no such conferences or consents it has been held that a defense attorney can consent to a mistrial without first consulting with his client. The court reasoned that the decision was an appropriate one for the attorney to make and not the client since the decision requires a legal evaluation of the case, analysis of the evidence presented, and likelihood of a more favorable jury at a potential retrial. *People v. Ferguson,* 67 N.Y.2d 383, 390, 502 N.Y. S.2d 972, 977, 494 N.E.2d 77, 82 (1986); *see Turner v. Sullivan,* 661 F.Supp. 535, 539 (E.D.N.Y.1987), *aff'd,* 842 F.2d 1288 (2d

Cir.1988). Consequently, there appears to be no duty imposed upon an attorney to consult with his client regarding a mistrial.

█ Moreover, the breach of an ethical obligation to a client does not, without proof of deficient performance, amount to ineffective assistance of counsel. *Nix v. Whiteside,* 475 U.S. 157, 165, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986); *see People v. Appel,* 120 A.D.2d 319, 321, 509 N.Y.S.2d 438, 440 (3d Dep't 1986), *appeal denied,* 69 N.Y.2d 824, 513 N.Y.S.2d 1030, 506 N.E.2d 541 (1987). Thus, petitioner's argument is rejected by the court.

### Deprivation of Due Process

Petitioner claims a denial of due process in the admission of the prejudicial evidence of a past criminal record, i.e., the testimony regarding a search of the records and the testimony regarding the photograph shown to Tirado. Certainly, a criminal defendant has a constitutional right to a fair trial. However, a petitioner may not obtain habeas corpus relief by merely showing that an error was committed but rather must establish that a right guaranteed by the Constitution was violated. *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). This burden, carried by petitioner, is a heavy one. *Minor v. Harris,* 556 F.Supp. 1371, 1378 (S.D.N.Y.), *aff'd,* 742 F.2d 1430 (2d Cir.1983).

█ The state argues that since the trial court gave curative instructions, the defendant's right to a fair trial was not violated. Prompt curative instructions will alleviate the need to declare a mistrial unless the defendant's right to a fair trial has been violated. *People v. Celeste,* 95 A.D.2d 961, 963, 464 N.Y.S.2d 295, 297 (3d Dep't 1983). Reference to a *criminal* record does violate a defendant's right to a fair trial. *Williams v. Henderson,* 451 F.Supp. 328, 331 (E.D.N.Y.), *aff'd,* 584 F.2d 974 (2d Cir.1978), *cert. denied,* 441 U.S. 911, 99 S.Ct. 2007, 60 L.Ed.2d 382 (1979).

█ However, the situation which took place during this trial did not even approach one of impinging on defendant's right to a fair trial. The witness referred

to checking records, not *criminal* records. The court then elicited curative testimony. Moreover, after the reference to a photograph, the court issued curative instructions and offered to grant a mistrial which counsel declined to accept.

Under circumstances far more egregious than the type of prejudice alleged here, it has been held that the defendant's right to a fundamentally fair trial was not violated. *See Broadwater v. Dunham,* 479 F.Supp. 1097 (E.D.N.Y.1979) (error committed by prosecutor during summation commenting on defendant's failure to proffer an exculpatory explanation to the arresting officer did not violate petitioner's constitutional rights); *Frazier v. Czarnetsky,* 439 F.Supp. 735 (S.D.N.Y.1977) (prosecutor's statement regarding confession of codefendant held not to violate right to a fair trial).

New York courts have refused to grant mistrials in cases with far more possible prejudice to a defendant. *See People v. Banks,* 130 A.D.2d 498, 499, 515 N.Y.S.2d 81, 83 (2d Dep't), *appeal denied,* 70 N.Y.2d 709, 513 N.E.2d 1311 (1987) (police officer's accidental reference to defendant's inadmissible statement deemed not to justify a mistrial where the trial court issued immediate curative instructions); *People v. Ingram,* 110 A.D.2d 852, 853, 488 N.Y.S.2d 253, 254 (2d Dep't) *appeal denied,* 66 N.Y.2d 615, 494 N.Y.S.2d 1038, 485 N.E.2d 242 (1985) (reference by prosecution witness that he had seen the defendant "in the cage, locked up" did not justify a mistrial since there was substantial evidence of defendant's guilt).

This court is mindful that a federal court examining a state trial proceeding has a more limited power of review when compared with reviewing a federal court conviction. *Sales v. Harris,* 675 F.2d 532, 541 (2d Cir.), *cert. denied,* 459 U.S. 876, 103 S.Ct. 170, 74 L.Ed.2d 140 (1982). This court's power is "the narrow one of due process, and not the broad exercise of supervisory power that [it] would possess in regard to [its] own trial court." *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

"The court's duty on a petition for *habeas corpus* is to determine whether the [prejudicial] testimony was material to the presentation of the defense so as to deprive the defendant of fundamental fairness." *Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988). There was substantial evidence against Vazquez including the eyewitness testimony of one of the victims, Tirado. In addition, Vazquez neither testified nor presented any witnesses.

The evidence against petitioner in the testimony of Tirado, the owner of the Casablanca, was convincing. Petitioner and his brothers, Freddie and Thomas Vazquez, were not strangers to the Casablanca. Thomas Vazquez had worked there as a bartender until three months before the murder, and Freddie Vazquez had been a frequent visitor. Tirado had been introduced to petitioner and had seen him at the Casablanca on four or five occasions. Tirado testified in detail as to the circumstances of the murder.

■ The second contention of Vazquez in support of his due process claim is that following White's reference to the photograph, the trial court was under a duty to declare a mistrial regardless of defense counsel's refusal to move for one. According to Vazquez, the trial court's failure "to do so denied petitioner a fair trial and due process of law." Petitioner's Memorandum of Law at 24.

In the instant case, the trial judge repeatedly asked defense counsel whether he wished to move for a mistrial. Defense counsel refused to move for one. As already indicated counsel might have had any one of a number of tactical reasons for declining to move for a mistrial including his perception that his client might have been acquitted. Under these circumstances the trial court merely used its discretion in not ordering a mistrial.

■ When a mistrial is declared without the consent of the defendant the court deprives the defendant of his right to a jury trial and possible acquittal. As a result, double jeopardy is triggered and a retrial is barred. *Dunkerley v. Hogan,* 579 F.2d 141, 145 (2d Cir.1978), *cert. denied,*

439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979); *Cardin v. Sedita*, 53 A.D.2d 253, 259, 385 N.Y.S.2d 667, 672 (4th Dep't 1976). Only if there is a manifest necessity should a court declare a mistrial without defendant's consent. *United States v. Mastrangelo*, 662 F.2d 946, 950 (2d Cir.1981), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982). *See also United States v. Ruggiero*, 846 F.2d 117, 123 (2d Cir.1988); *Enright v. Siedlecki*, 59 N.Y.2d 195, 199, 464 N.Y.S.2d 418, 421, 451 N.E.2d 176, 179 (1983). The trial court made it clear that it would only grant a mistrial if petitioner personally joined in such a motion. Tr. 471–73. This court, finding no manifest necessity, concludes that the trial judge did not abuse his discretion.

### CONCLUSION

The court finds that petitioner's claims are without merit and, hence, his petition for a writ of habeas corpus is dismissed. Since the court finds that petitioner has advanced colorable arguments, worthy of apellate review, this dismissal shall constitute a certificate of probable cause within the meaning of Federal Rule of Appellate Procedure 22(b).

So ordered.