Timothy **FAUX**, Petitioner,

v.

Warden Everett **JONES**, Respondent.

No. CIV–87–161E

United States District Court, W.D. New York.

Jan. 9, 1990.

---

See also 124 A.D.2d 20, 511 N.Y.S.2d 192.

Thomas H. Brandt, Buffalo, N.Y., for petitioner.

Asst. Atty. Gen. William H. Maldovan, Buffalo, N.Y., for respondent.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

The abovenamed petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254 affording him release from the custody of New York's Department of Correctional Services. The Petition was referred by the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) to United States Magistrate Edmund F. Maxwell who filed a Report and Recommendation ("R & R") March 29, 1989

urging that the Petition be dismissed. No objections thereto, timely or otherwise, have been filed in this Court.[1] Ordinarily in such circumstances the R & R would be adopted as the opinion and order of this Court. However, inasmuch as this Court finds the Magistrate's instant determinations not fully dispositive of the merits of the Petition, this Court has conducted a *de novo* review.

The petitioner was initially indicted June 11, 1981 in the County Court for the County of Niagara on 340 counts of rape, sodomy, sexual abuse and endangering the welfare of a child.[2] Record on Appeal ("R.") at 809. Upon the close of the prosecution's case in chief, all but 140 of the charges were dismissed because of the unavailability of a key witness to testify with respect to them. R. at 807. Of the remaining 140 charges, the trial judge selected fourteen for submission to the jury as a representative sampling of the petitioner's alleged crimes pursuant to subdivision 6(b) of section 300.40 of New York's Criminal Procedure Law ("CrPL"). *Ibid.* The prosecution objected to the submission of representative counts because, *inter alia*, of the uncertainty of the status of the counts which would thereby be deemed dismissed under subdivision 7 of CrPL § 300.40. R. at 781.

The jury returned verdicts of guilty on eight of the fourteen counts and of not guilty on the other six.[3] R. at 804–805. On appeal the New York Supreme Court, Appellate Division, Fourth Department, reversed because of the lack of specificity of those counts of the indictment and because the trial court had, in effect, instructed the jury that it could consider crimes other than those submitted. R. at 806–808; *see People v. Faux*, 99 A.D.2d 654, 472 N.Y. S.2d 230 (4th Dept.), *appeal denied*, 62 N.Y.2d 649, 476 N.Y.S.2d 1043 (1984). The Appellate Division granted the prosecution leave to resubmit "the charges" to another grand jury but did not specify whether it thereby meant all of the 340 charges in the original indictment, or the 140 retained at the close of the prosecution's case, or the fourteen actually submitted to the jury, or merely the eight charges of which the petitioner was convicted. *Ibid.*

Subsequently, the petitioner was re-indicted on twenty-nine counts of rape, sodomy and sexual abuse.[4] R. at 10–20. He was convicted by a trial jury on all twenty-nine counts. R. at 7–9. One of these counts had not appeared in the original indictment. All of the others were previously-lodged charges revisited. The petitioner had been acquitted in his first trial on three of the renewed charges (counts 2, 4 and 8 of the new indictment) and convicted in the first trial on seven of them. The remaining counts had been among those dismissed under the operation of subdivision 7 of CrPL § 300.40 when a representative sampling of charges had been submitted to the jury.

On appeal from the verdict in the second trial, the petitioner argued *inter alia* that he could only be re-tried on those charges upon which he had been convicted in his

---

1. Objections must have been filed within ten days of a party's receipt of a copy of a magistrate's determination. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. rule 72(b). The petitioner had been given an extension until June 2, 1989 to file any objections—*see* letter from this Court to the petitioner (dated May 8, 1989)—, but none has been filed.

2. Specifically he was charged with ninety-one counts of first degree rape, sixteen counts of second degree rape, twenty-three counts of third degree rape, ninety-one counts of first degree sodomy, twenty-three counts of third degree sodomy, eighty-six counts of first degree sexual abuse, five counts of second degree sexual abuse, and five counts of endangering the welfare of a child.

3. The petitioner was found guilty on two counts of first degree rape (counts no. 1 and 21), two counts of second degree rape (counts 6 and 56), two counts of first degree sexual abuse (counts 11 and 120), one count of second degree sexual abuse (count 16) and one count of first degree sodomy (count 67). He was found not guilty of one count of first degree sexual abuse (count 125), one count of first degree sodomy (count 90) and four counts of endangering the welfare of a child (counts 336, 337, 339 and 340).

4. Specifically he was indicted on three counts of first degree sodomy, eleven counts of first degree sexual abuse, eight counts of first degree rape, six counts of second degree rape and one count of second degree sodomy.

first trial. *See* Brief for Defendant–Appellant, dated November 10, 1986. The Appellate Division reversed the petitioner's conviction on the three charges of which he had been previously acquitted,[5] ruling that his re-trial on such charges violated his constitutional right against double jeopardy, but affirmed his convictions on all other counts. *See People v. Faux*, 124 A.D.2d 20, 511 N.Y.S.2d 192 (4th Dept.1987). The petitioner sought leave to appeal to New York's Court of Appeals, but such was denied February 6, 1987.[6]

On the instant Petition it is argued that the right against double jeopardy precluded re-trial on the eighteen charges which had been dismissed at the petitioner's first trial pursuant to subdivisions 6(b) and 7 of CrPL § 300.40, and also that certain evidence introduced at the second trial respecting such alleged crimes (and others for which the petitioner was not re-indicted) prejudicially infected the jury's deliberations respecting the other charges in violation of the petitioner's right to due process.[7]

The Fifth Amendment's double jeopardy clause,[8] which is applicable to the States under the Fourteenth Amendment—*see Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)—, rests upon the deeply-rooted, Anglo–American jurisprudential premise that "a defendant should not be twice tried or punished for the same offense." *United States v. Wilson*, 420 U.S. 332, 339, 95 S.Ct. 1013, 1020, 43 L.Ed.2d 232 (1975). This is because "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as en-hancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

The double jeopardy clause has therefore been held to afford "three related protections"—*viz.*, (1) against a subsequent prosecution for the same offense following an acquittal, (2) against a subsequent prosecution for the same offense following a conviction and (3) against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

█ The bar against re-trial following acquittal, whether by jury verdict or a court ruling of insufficient evidence, is unequivocal. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977). But, where charges are dismissed without a final resolution of their merits against the accused, a subsequent trial on these charges is not necessarily precluded. *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). On the one hand, the accused has a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *accord, Arizona v. Washington, supra*, 434 U.S. at 503 & fn. 11, 98 S.Ct. at 829 fn. 11. A second trial might be "grossly unfair" if it "increases the financial and emotional burden on the accused," or "prolongs the period in which he is stigmatized." *Id.*, at 503–504, 98 S.Ct. at 829. But, on the other hand, the right to a single trial must "in some instances be subordinated to the public's interest." *Wade v. Hunter, supra*, 336 U.S. at 689, 69 S.Ct. at 837. Thus, whenever a trial judge over a defendant's objection declares a mistrial be-

---

5. Because the petitioner's conviction on these three rape charges did not withstand his state court appeal, the Petition is not addressed to them.

6. The State has stipulated that "it appears that petitioner's state court remedies have been exhausted." Paragraph 8 of Answer.

7. Both the double jeopardy and due process clauses were invoked before New York's Court of Appeals. *See* Paragraph 7 of Answer. Under the exhaustion rule in this Circuit, the petitioner has thereby preserved his constitutional claims under both of such provisions. *See Klein v. Harris*, 667 F.2d 274, 282 (2d Cir.1981).

8. The relevant language of the Fifth Amendment is as follows: " * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

cause of "manifest necessity"—*Arizona v. Washington, supra,* 434 U.S. at 505, 98 S.Ct. at 830—or a defendant successfully obtains upon his own motion a termination of the trial in his favor prior to any verdict as to guilt or innocence—*United States v. Scott,* 437 U.S. 82, 94, 101, 98 S.Ct. 2187, 2195, 2199, 57 L.Ed.2d 65, *reh. denied,* 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978)—, a subsequent prosecution does not offend the double jeopardy clause.

At the close of the prosecution's case during the first trial and after double jeopardy protections had attached—*see Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) ("In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn.")—, the trial judge had, as noted hereinabove, submitted only a selected "representative sampling" of the then-remaining 140 counts of the indictment pursuant to subdivision 6(b) of CrPL § 300.40. The petitioner argues that he was *de facto* acquitted on the unsubmitted charges.

To understand the petitioner's contention it is necessary to examine the statute under which a New York trial court is enabled to submit only "representative" counts to a jury. Subdivision 6 provides:

> "[T]he court is not required to submit any particular count to the jury when:
>
> \*  \*  \*  \*  \*  \*
>
> "(b) The number of counts or the complexity of the indictment requires selectivity of counts by the court in order to avoid placing an unduly heavy burden upon the jury in its consideration of the case. In such case, the court may submit to the jury a portion of the counts which are representative of the people's case."

All counts unsubmitted to the jury are "deemed to have been dismissed by the court." Subdivision 7 of CrPL § 300.40. But when "the court, over objection of the people, refuses to submit a count which is consecutive as to every count actually submitted, such count is deemed to have been dismissed by a trial order of dismissal." *Ibid.* A dismissal deemed a "trial order of dismissal" is, under CrPL § 290.10, statutorily defined as being based upon the legal insufficiency of the evidence to support a conviction, meaning that, at least in form if not in substance, a trial order of dismissal upon a charge is an acquittal upon such charge. *See United States v. Martin Linen Supply Co., supra,* 430 U.S. at 571, 97 S.Ct. at 1354 (acquittal equals any resolution favorable to the defendant of the factual elements of the offenses charged); *see also* Practice Commentary following Section 290.10 ("trial order of dismissal device was renamed from the old directed verdict of acquittal"). Accordingly, the petitioner has argued that in this case the non-submission of charges against him under subdivision 7 constituted an effective acquittal on such charges, thereby barring his subsequent re-prosecution on the eighteen previously dismissed charges under the double jeopardy clause.

The contention cannot be adequately evaluated with relation to the language of the CrPL alone, and the New York's courts have been silent upon the proper interpretation of CrPL §§ 290.10 and 300.40. An acquittal for double jeopardy purposes must actually represent a resolution, whether or not correct, of at least some of the factual elements of the offense charged. *United States v. Martin Linen Supply Co., supra,* at 571, 97 S.Ct. at 1354. And the determination whether a trial order of dismissal may substantively be considered an acquittal is one which has such far-reaching implications regarding an issue of significant state interest that this Court feels justified in abstaining from attempting to answer it.[9] *See Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

Hence, for the double jeopardy clause to be presently availing to the peti-

---

**9.** This Court notes that New York's Court of Appeals entertains, in its discretion, certified questions involving "determinative questions of New York law" in a pending action "for which there is no controlling precedent" of such highest New York court. But the certifying court must be one of last resort or a federal appellate court. *See* Section 500.17(a) of the Rules of New York's Court of Appeals. Hence, such route is not open to this Court.

tioner, it must be ascertained whether, despite the absence of a finding an actual resolution of the constructively dismissed charges, reprosecution should have been barred. The inquiry concerns the existence *vel non* of "manifest necessity" for the dismissal; such must have been present to undercut the petitioner's "valued right" to have all his charges forever disposed of within one trial. *See Arizona v. Washington, supra,* 434 U.S. at 503–505, 98 S.Ct. at 829–30. The State bears the burden of establishing manifest necessity—*id.,* at 505–506, 98 S.Ct. at 830–31—and argues that such was present in this case because the jury would have been overburdened if required to consider and determine all 140 charges outstanding against the petitioner. The State points out that the petitioner's counsel had agreed at the time of submittal that "to submit 140 counts is close to beyond any juror's ability to deal with in a rational way." *See* R. at 781. This Court agrees. Thus, this Court is satisfied that the respondent has shown that there was manifest necessity for not submitting more than a few representative counts to the jury and constructively dismissing the rest pursuant to CrPL § 300.40. Accordingly, it cannot be decided whether the double jeopardy clause has been violated here in view of this Court's abstention from deciding the proper interpretation of CrPL §§ 290.10 and 300.40.

■ Nevertheless and although not asserted by the petitioner in such particular fashion, the re-prosecution in this case may well have contravened due process.[10] It appears that—and as the Magistrate observed—"[i]t is only because [the] petitioner challenged his [initial] conviction and the appellate court dismissed the indictment that [the] petitioner was retried." R & R at 14. The petitioner's decision to invoke his right of appeal was of course his own and uncoerced, and "the Double Jeopardy

clause * * * does not relieve a defendant from the consequences of his voluntary choice." *United States v. Scott, supra,* 437 U.S. at 99, 98 S.Ct. at 2198. But, nevertheless, due process *does* require that a defendant be relieved of any retaliatory consequence from the free exercise of his right to appeal.

■ In *North Carolina v. Pearce, supra,* it was held that "there exists [among the dictates of the double jeopardy clause] no absolute constitutional bar to imposition of a more severe sentence upon retrial," but that, where an increased sentence is imposed upon a defendant for having successfully pursued a right of appeal—whether for constitutional or nonconstitutional error—, due process is violated. *Id.,* 395 U.S. at 723–725, 89 S.Ct. at 2079–80. In a series of cases following *North Carolina v. Pearce,* the United States Supreme Court has reiterated "this basic—and itself uncontroversial—principle" that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort' "—*United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982); *see Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984); *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, *reh. denied,* 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)—, and has specifically extended that principle to include the punitive enhancement of charges on reprosecution.

For example, in *Blackledge v. Perry, supra,* a defendant, having been sentenced in a municipal court (with jurisdiction for trial of only misdemeanors) to six months' im-

---

**10.** Notwithstanding that the due process clause is here implicated in a manner unasserted by the petitioner before the New York courts, this Court holds that such clause constitutes a single federal constitutional claim for purposes of the exhaustion doctrine. *See Klein v. Harris, supra,* at 282 ("state court brief must have contained words, such as 'under the due process clause' "). The petitioner, in having exhausted the pursuit in state court of his rights under the due process clause, is construed to have exhausted all recognized formulations of its protection, whether or not stated in a particularized manner.

prisonment for assault, invoked his statutory right to a *de novo* trial in a state superior court (possessing felony jurisdiction). The prosecutor thereupon obtained an indictment relating to the same conduct, but charging the defendant with a felony—to wit, assault with a deadly weapon. The defendant pled guilty to the felony charge and was given an incarceratory sentence of five to seven years. The Court noted that—unlike its prior cases—"in the situation here the central figure is not the judge or the jury, but the prosecutor." It held nevertheless that "the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of *[North Carolina v.] Pearce, [supra]*." *Id.,* 417 U.S. at 27, 94 S.Ct. at 2102. The Court noted that "[a] prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* * * * [and], if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial." *Id.,* at 27–28, 94 S.Ct. at 2102.

In both *North Carolina v. Pearce* and *Blackledge v. Perry* the highest court invoked a "presumption of vindictiveness" which could be "overcome only by objective information in the record" justifying the more severe charge or sentence. *United States v. Goodwin, supra,* 457 U.S. at 374–375, 102 S.Ct. at 2489. The presumption was applicable in these cases because of the likelihood of vindictiveness. "Both [cases] involved the defendant's exercise of a procedural right that caused a complete retrial after he had been once tried and convicted." *Id.,* at 376, 102 S.Ct. at 2490. Conversely, in both *Bordenkircher v. Hayes* and *United States v. Goodwin,* both *supra,* the Court was confronted with a prosecutor's *pre-trial* decision to enhance charges and declined to apply a presumption of vindictiveness because of the unlikelihood that a prosecutor would retaliatorily respond to a defendant's pre-trial demand for a jury trial or his refusal to plead guilty to the originally charged offense. In these latter cases the defendant was instead required (but unable) to establish affirmatively vindictiveness on the prosecutor's part. *See United States v. Goodwin, supra,* 457 U.S. at 384, 102 S.Ct. at 2494.

The instant scenario is most analogous to that in *Blackledge v. Perry, supra.* Here, as in that case, there was an appeal from a conviction at trial and an enhancement of charges upon retrial. Also, as in that case, there is a reasonable likelihood that this enhancement of charges was motivated by vindictiveness. With 126 charges dismissed without resolution at the first trial under CrPL § 300.40 and lurking in the background for possible resuscitation in the event of re-indictment, the prosecution had a magnificent opportunity to up the ante at a second trial following the petitioner's successful appeal from the first. Ostensibly, this is exactly what occurred. The petitioner faced only fourteen charges at his first trial—supposedly "representative" of all his alleged crimes. He was convicted of only eight of those charges. Yet he was confronted with twenty-nine charges the second time around. It does not matter that there is no specific evidence indicating that the second prosecution was made in bad faith or with malice. The likelihood of vindictiveness arising from the totality of the circumstances justifies the inference that such was present. Thus, this Court is of the view that, as in *Blackledge v. Perry,* a presumption of vindictiveness should apply and that, therefore, the state must bear the burden of establishing, from "objective information in the record," a justification for its more severe reprosecution. *United States v. Goodwin, supra,* at 374, 102 S.Ct. at 2489.

This matter will be remanded to the Magistrate in order that the State may attempt to meet its burden. Such procedure seems especially advisable in light of "blank spots" in the record. It is uncertain, for example, whether the increase in the number of charges on retrial increased the potential severity of any sentence to be imposed. Also, why were three charges re-

lating to conduct for which the petitioner was acquitted by the jury at the first trial re-laid? The answer to such questions may well illuminate the prosecution's general state of mind with regard to the nature of the charges of the second indictment. Regardless of how these specific questions are answered, they can only represent an unexhaustive guide to the determination of an issue which must be considered under all circumstances—namely, whether the State is able to point to sufficient information to overcome the presumption that the re-prosecution of the petitioner was, at least in part, vindictive in nature and therefore violative of due process.

Accordingly, it is hereby ORDERED that this matter is re-remanded to Magistrate Maxwell pursuant to 28 U.S.C. § 636(b)(1)(B) for further proceedings consistent with the foregoing.