**PEOPLE ex rel. Kenneth MAULA, Petitioner,**

v.

**Lloyd FRECKLETON, Warden of the Rikers Island Correctional Facility, Respondent.**

**No. 91 Civ. 8056 (DNE).**

United States District Court, S.D. New York.

Jan. 22, 1992.

**890**

Frost & Berenholtz, New York City (Gary L. Berenholtz, of counsel), for petitioner.

Robert T. Johnson, Dist. Atty., Bronx County (Daniel S. Ratner, Asst. Dist. Atty., of counsel), for respondent.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Petitioner Kenneth Maula ("Maula" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims that his conviction on a gun charge in Supreme Court of the State of New York is invalid under the double jeopardy clause of the United States Constitution. For the reasons stated below, the writ of habeas corpus is denied.

**1.** These facts are taken from the Appellate Division's decision in *People v. Maula*, 138 A.D.2d 307, 526 N.Y.S.2d 441, 442–43 (1st Dep't 1988), *appeal denied*, 72 N.Y.2d 863, 532 N.Y.S.2d 513, 528 N.E.2d 903 (1988).

**2.** Criminal Procedure Law section 290.10 provides that a dismissal due to insufficient evi-

## BACKGROUND

This case arises out of the fatal shooting of Dr. Louis DeBellis on July 18, 1985. Petitioner, who was ultimately indicted and convicted on a charge connected with this death, had known DeBellis for some time before the shooting. DeBellis had purchased property in Bronx County from petitioner and, subsequently, petitioner and DeBellis became close friends. The relationship deteriorated, however, when petitioner refused to perform an agreement to sell DeBellis another property. DeBellis commenced an action against petitioner which resulted in a judgment that directed petitioner to sell the property to DeBellis. Petitioner obtained a stay of the decision pending appeal on the condition that he provide a bond and perfect his appeal by a specified date.

On the day before the bond was due, petitioner and DeBellis engaged in a heated argument at petitioner's printing business, during which DeBellis punched petitioner and threatened him with further injury. DeBellis then left petitioner's office and went downstairs, presumably to leave the building. To assure that DeBellis actually had departed the premises, petitioner, after removing a loaded gun from his desk, followed DeBellis downstairs. After exchanging more words, petitioner fired three shots at DeBellis, one of which struck DeBellis and killed him.[1]

On August 6, 1986, petitioner was indicted in New York Supreme Court, Bronx County, for murder in the second degree, criminal possession of a weapon in the second degree and criminal use of a firearm in the second degree in connection with this shooting. During the trial, petitioner moved to dismiss all three counts due to insufficient evidence.[2] The court denied petitioner's motion. Without explanation,

dence is termed a "trial order of dismissal." A court may grant a trial order of dismissal when "the trial evidence is not legally sufficient to establish the offense charged ... or any lesser included offense." Criminal Procedure Law § 290.10.

however, Justice Warner, who presided at this trial, ultimately asked the jury to consider only the second degree murder count and lesser included homicide offenses; he did not submit the weapons charges to the jury. On January 9, 1987, petitioner was convicted of the lesser included offense of manslaughter in the first degree.

The Appellate Division, First Department, reversed petitioner's conviction. The Appellate Division found that at trial, petitioner had raised an affirmative defense of lack of criminal responsibility due to mental disease or defect, and had introduced psychiatric testimony in support of this defense. The trial court, however, refused to instruct the jury not to consider such testimony when determining whether defendant committed the crime. The Appellate Division reversed because the lower court should have provided a limiting instruction concerning the psychiatric testimony. *See People v. Maula*, 526 N.Y.S.2d at 444–45.

The state decided to seek a new trial. Because petitioner was convicted of a lesser included offense not contained in the original indictment, however, New York law required the State to obtain a new indictment. *See People v. Beslanovics*, 57 N.Y.2d 726, 727, 454 N.Y.S.2d 976, 440 N.E.2d 1322 (1982). The new indictment charged petitioner with manslaughter in the first degree, criminal use of a firearm in the first and second degrees and criminal possession of a weapon in the second degree.

On June 28, 1989, petitioner was convicted of fourth degree criminal possession of a weapon, a misdemeanor, and acquitted on all other charges. The court sentenced petitioner to a prison term of one year. On appeal, the Appellate Division vacated the sentence because the lower court "erred when it considered the death of the victim in determining the sentence to be imposed on the defendant for the misdemeanor gun charge." *People v. Maula*, 163 A.D.2d 180, 558 N.Y.S.2d 42, 43 (1st Dep't 1990). Petitioner never presented to the Appellate Division a claim that his trial on the weapons charge violated the Fifth Amendment's double jeopardy clause. On October 23, 1990, the Supreme Court resentenced petitioner to a one-year prison term. The Appellate Division affirmed the sentence and rejected petitioner's sole argument, that the sentence was excessive.

Petitioner then sought a writ of habeas corpus in New York Supreme Court on the ground that his retrial on gun possession charges violated federal and state constitutional protections against double jeopardy. The New York Supreme Court determined that it could hear the petition despite petitioner's failure to raise a double jeopardy argument on direct appeal. *See People ex rel. Maula v. Freckleton*, No. 8497–1991 (Sup.Ct.Bronx Co. Apr. 5, 1991). The court, however, denied the petition on the merits. *See id.* The court reasoned that the double jeopardy clause bars reprosecution only where a defendant is acquitted or a charge is dismissed due to insufficient evidence. The court found that the decision not to submit gun charges to the jury was not a dismissal based upon a failure of proof or legal insufficiency. Accordingly, the court held that the double jeopardy clause did not bar petitioner's second trial on the gun charges. *See id.*

The Appellate Division granted petitioner's application for bail pending appeal of the Supreme Court's order. On October 17, 1991, the Appellate Division affirmed the lower court's decision. *See People ex rel. Maula v. Freckleton*, —— A.D.2d ——, 574 N.Y.S.2d 753 (1st Dep't 1991). On November 19, 1991, the New York Court of Appeals denied petitioner leave to appeal. *See People ex rel. Maula v. Freckleton*, No. 1255 (Nov. 19, 1991).

On December 2, 1991, petitioner, by order to show cause, asked this Court to stay execution of his sentence pending disposition of this petition for federal habeas relief. Petitioner had been scheduled to return to prison on December 5, 1991. This Court signed the order to show cause and granted petitioner's application for a stay. It also scheduled oral argument and a hearing for December 4, 1991. The argument and hearing took place on December 4 and December 5, 1991.

## DISCUSSION

Petitioner argues that his retrial on gun charges violates the double jeopardy clause of the Fifth Amendment. The State argues that petitioner may not obtain federal habeas relief because petitioner failed to exhaust his state remedies. In the alternative, the State contends that retrial in this case does not violate the double jeopardy clause.

### A. Exhaustion

■ The State concedes that petitioner raised a double jeopardy argument in the state habeas proceedings. The State contends, however, that the double jeopardy argument petitioner presented to the state courts differed from the claim presented here. Specifically, the State asserts that while petitioner argued state statutory and constitutional double jeopardy law before the state courts, the claim before this Court involves federal principles of double jeopardy. The State alleges that these separate theories involve distinct legal contentions and have different factual underpinnings. Because petitioner never expressly presented the federal claim to the state courts, the State asserts that this claim is not exhausted and that this Court, under *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982), must dismiss Maula's "mixed petition" of exhausted and unexhausted claims.

Before a federal court may grant habeas relief to a state prisoner, the petitioner must first exhaust available state remedies. *See* 28 U.S.C. § 2254(b)–(c); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Irvin v. Dowd*, 359 U.S. 394, 404–05, 79 S.Ct. 825, 831, 3 L.Ed.2d 900 (1959). The exhaustion doctrine is not jurisdictional, but rather it is based on principles of comity and federalism. *See Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989); *Rose*, 455 U.S. at 515, 102 S.Ct. at 1201; *Darr v. Burford*, 339 U.S. 200, 204–05, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). Exhaustion requires that petitioner give state tribunals a fair opportunity to decide any federal constitutional claims. *See*

*Rose*, 455 U.S. at 515, 102 S.Ct. at 1201; *Picard*, 404 U.S. at 275, 92 S.Ct. at 512.

A fair opportunity consists of informing the state court of both the factual and legal premises of a constitutional claim. *See Picard*, 404 U.S. at 276–77, 92 S.Ct. at 513; *Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir.1991). This requirement is satisfied if the legal and factual bases of petitioner's federal habeas claim is the substantial equivalent of claims presented to the state court. *See Picard*, 404 U.S. at 278, 92 S.Ct. at 513; *County Court v. Allen*, 442 U.S. 140, 147–48 n. 5, 99 S.Ct. 2213, 2219 n. 5, 60 L.Ed.2d 777 (1979). "Adherence to exhaustion principles does not require a petitioner to raise his claims by citing chapter and verse of hornbook law; it simply mandates that the state be given a fair opportunity to hear the claim." *Blissett v. Lefevre*, 924 F.2d 434, 439 (2d Cir.) (quoting *Abdurrahman v. Henderson*, 897 F.2d 71, 73 (2d Cir.1990)), *cert. denied*, —— U.S. ——, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991).

The Second Circuit, in analyzing the exhaustion doctrine's "fair opportunity" requirement, has stated that:

> even if a particular matter is not treated generally as having constitutional dimension, if the courts of the state in question have themselves previously treated the fact pattern as appropriate for constitutional analysis, it would be unreasonable to suppose that they are not alert to constitutional considerations. Thus we consider that a defendant who cites state [or federal] precedent that employs pertinent constitutional analysis has adequately put the state courts on notice of the constitutional thrust of his claim.

*Dave v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982) (en banc).

Petitioner has exhausted state remedies by giving the state courts a fair opportunity to adjudicate his Fifth Amendment double jeopardy argument. Petitioner expressly presented a federal constitutional double jeopardy claim to New York's Appellate Division by entitling his brief's primary argument "Did the Court below err in finding that the submission of the weapons counts to the jury in the second trial was

not a violation of double jeopardy as set forth in the Constitution of the United States."

In addition, petitioner's brief to the Appellate Division contains an extensive discussion of the double jeopardy issue, both under New York statutory principles and under federal constitutional law. For instance, petitioner's brief cites United States Supreme Court and federal district court decisions that interpret the Constitution's double jeopardy clause. It also quotes from New York state court decisions that employ United States Supreme Court precedents. Furthermore, the state habeas courts rejected petitioner's claim for relief on double jeopardy grounds, which reveals their awareness of this issue. Even if petitioner did not expressly present a federal constitutional double jeopardy claim, the New York courts were alerted to the existence of a possible federal constitutional claim and had a fair opportunity to adjudicate it. Accordingly, petitioner's claim is exhausted and this Court may address the merits of his habeas petition.

### B. The Merits: Double Jeopardy

■ Having exhausted his state court remedies, petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the ground that his gun conviction in the second state court trial violates the double jeopardy clause of the Fifth Amendment. Petitioner asserts that the indictment associated with his first state court trial contained homicide and weapons charges, but the judge in that case, Justice Warner, chose not to submit the weapons counts to

the jury. Under New York Criminal Procedure Law ("CPL") section 300.40(6)–(7),[3] a count not submitted to the jury is deemed dismissed. After the Appellate Division reversed petitioner's conviction for manslaughter, the State obtained a new indictment that contained homicide and weapons counts. Petitioner argues that because his gun counts were considered dismissed under CPL § 300.40, reprosecution was improper under the double jeopardy clause of the Fifth Amendment of the United States Constitution.

In opposing the petition, the State cites CPL § 470.55(1),[4] which allows retrial on non-submitted counts unless such counts are dismissed on the merits after an adjudication of the facts. The state alleges that because the judge's decision not to submit the gun counts to the jury was not due to insufficient evidence, and, therefore, was not an adjudication of the facts, the double jeopardy clause permits retrial.

Federal habeas relief does not, of course, turn on interpretations of state law. *See Rogers v. Peck*, 199 U.S. 425, 26 S.Ct. 87, 50 L.Ed. 256 (1905). This Court assumes that the parties' statutory arguments are an aspect of their federal constitutional claims regarding whether retrial in this instance violates the double jeopardy clause.

The Fifth Amendment, which provides that no "person be subject for the same offense to be twice put in jeopardy of life or limb ...," U.S. Const. amend. V, applies to the states through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23

---

**3.** Criminal Procedure Law § 300.40 provides in relevant part that:

> 6. Notwithstanding any other provision of this section, the court is not required to submit any particular count to the jury when:
> * * *
> (b) The number of counts or the complexity of the indictment requires selectivity by the court in order to avoid placing an unduly heavy burden upon the jury in its consideration of the case. In such case, the court may submit to the jury a portion of the counts which are representative of the people's case.
> 7. Every count not submitted to the jury is deemed dismissed by the court....

**4.** Criminal Procedure Law § 470.55(1) provides that:

> Upon a new trial of an accusatory instrument resulting from an appellate court order reversing a judgment and ordering such new trial, such accusatory instrument is deemed to contain all the offenses which it contained and charged at the time the previous trial was commenced, regardless of whether any count was dismissed by the court in the course of such trial, except (a) those upon or of which the defendant was acquitted or deemed to have been acquitted, and (b) those dismissed upon appeal or upon some other post-judgment order.

L.Ed.2d 707 (1969). The double jeopardy clause implies that "[a] judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by reversal." *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Nevertheless, the double jeopardy clause does not bar all reprosecutions. Retrial may be appropriate where a case is aborted for reasons other than an acquittal or insufficient evidence. *See Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). For instance, in the case of a mistrial, retrial is appropriate where there was "manifest necessity" for aborting the trial over a defendant's objections.[5] *See id.*

For the reasons stated below, this Court finds that the state court's decision not to submit the gun count to the jury did not rest on a determination of insufficient evidence. Accordingly, retrial may be appropriate. To assess whether retrial is proper in this situation, this Court concludes, also for the reasons stated below, that the double jeopardy standard governing mistrials should also control non-submission of charges to a jury. Under the mistrial standard, where a defendant objects to a mistrial, reprosecution is permissible only if there was manifest necessity for declaring a mistrial. Where, however, a defendant consents to a mistrial, the state may retry a defendant unless the prosecutor or judge obtained defendant's consent in bad faith. *See Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Lee v. United States*, 432 U.S. 23, 32–33, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977). *United States v. Dinitz*, 424 U.S. 600, 606–07, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); *Vazquez v. Scully*, 694 F.Supp. 1094 (S.D.N.Y.1988).

Therefore, a defendant who objects to the non-submission of charges may not face retrial unless the state can show manifest necessity for the non-submission. Where a defendant consents to the non-submission decision, however, retrial is appropriate unless the consent was induced by judicial or prosecutorial bad faith.

1. *Non–Submission Was Not an Adjudication of the Facts*

◼ The trial court's decision not to submit the weapons charges to the jury in petitioner's first trial was not an acquittal or based upon a finding of insufficient evidence. The evidence at trial was sufficient to send the gun charge to the jury.

While testifying at the first trial, petitioner admitted firing an unlicensed weapon. *See People v. Maula*, 526 N.Y.S.2d at 444. Also at this first trial, after the State and petitioner had presented their cases to the jury, petitioner moved for a trial order of dismissal, or a dismissal due to insufficient evidence, on the weapons charges. *See* CPL § 210.10. Justice Warner denied this motion. Immediately after denying

---

**5.** "Manifest necessity" is found only if a "scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). The record must reflect that the trial court kept "in the forefront the defendant's valued right 'of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.'" *United States v. Starling*, 571 F.2d 934, 938 (5th Cir.1978) (quoting *Jorn*, 400 U.S. at 486, 91 S.Ct. at 557).

Factors courts have considered include whether the trial judge consulted counsel before declaring a mistrial, and whether the record indicates that the judge considered alternatives to declaring a mistrial. *See Arizona v. Washington*, 434 U.S. 497, 514 n. 34, 98 S.Ct. 824, 835 n. 34, 54 L.Ed.2d 717 (1978); *Grandberry v. Bonner*, 653 F.2d 1010, 1015 (5th Cir.1981); *Illinois v. Somerville*, 410 U.S. 458, 469–70, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973). "A precipitate decision, reflected by a rapid sequence of events culminating in a declaration of a mistrial, would tend to indicate insufficient concern for the defendant's constitutional protection." *Brady v. Samaha*, 667 F.2d 224, 229 (1st Cir.1981); *see also Lovinger v. Circuit Court of 19th Judicial Dist.*, 845 F.2d 739, 745–746 (7th Cir.) (court refused to find manifest necessity where judge made no record, did not consult with counsel and appeared to declare a mistrial in a rash fashion), *cert. denied*, 488 U.S. 851, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988).

the motion, Justice Warner stated his intention not to submit the gun charges to the jury. This Court must conclude, therefore, that Justice Warner chose not to submit the gun charges to the jury for reasons other than lack of proof. Based on such evidence, New York Supreme Court and the Appellate Division found that Justice Warner's decision not to submit the gun counts was not due to insufficient evidence. *See People ex rel. Maula v. Freckleton,* No. 8497–1991 (Sup.Ct.Bronx Co. Apr. 5, 1991); *People ex rel. Maula v. Freckleton,* — A.D.2d ——, 574 N.Y.S.2d 753 (1st Dep't 1991). Accordingly, this Court concludes that Justice Warner's decision not to submit the gun charges to the jury was not an acquittal or a decision on the merits.

### 2. *Double Jeopardy Mistrial Standard Governs Non–Submission of Charges Where Non–Submission Not Based on Insufficient Evidence*

Because this Court concludes that Justice Warner chose not to submit the weapons charges to the jury for reasons other than insufficient evidence, retrial may be appropriate. As previously noted, in assessing whether retrial is appropriate when a judge decides not to submit counts to a jury for reasons other than failure of proof, this Court adopts the double jeopardy standard in the case of a mistrial. Accordingly, where a defendant objects to non-submission of a count, the double jeopardy clause bars retrial unless there was manifest necessity for the mistrial. In contrast, where a defendant consents to the non-submission, the state may retry defendant absent prosecutorial or judicial bad faith.

#### a. Rationale for Double Jeopardy Rule in Mistrial Cases

It is appropriate to employ the mistrial standard in the non-submission context because the rationales that animate the mistrial rule apply with equal force where a judge decides not to submit counts to a jury. The double jeopardy clause protects individuals against the financial and emotional hardships of successive prosecutions and also prevents the unfairness that

would result if the state had a second opportunity to obtain a conviction. *See Gori v. United States,* 367 U.S. 364, 369, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961); *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). The clause protects "a defendant's valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

The double jeopardy mistrial standards are based on the idea that retrial even after an uncompleted initial trial may be unfair. A retrial "increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed." *Arizona v. Washington,* 434 U.S. 497, 503–04, 98 S.Ct. 824, 829–30, 54 L.Ed.2d 717 (1978); *see also United States v. Jorn,* 400 U.S. 470, 483, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971); *Gori v. United States,* 367 U.S. 364, 369, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961); *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

Nevertheless, the double jeopardy clause does not bar all reprosecutions. The standards governing retrial in a mistrial scenario attempt to balance the concerns underlying the double jeopardy clause with the public's interest in just judgments. *See Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). The Supreme Court has stated that:

> Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to the jury.

*Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830; *see Jorn,* 400 U.S. at 479–80, 91 S.Ct. at 554.

In an attempt to balance these interests, the Supreme Court has held that in order to retry a defendant who objects to a mistrial, "in view of the importance of the right [to resolve all charges in one proceeding], and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of ... [showing] 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id.*

Therefore, in the case of a mistrial, a defendant who consents to the termination of the first trial may again be tried on the same offense, unless the judge or prosecutor intended to cause a mistrial. *See Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Lee v. United States,* 432 U.S. 23, 32–33, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977). In contrast, absent such consent, a defendant may be retried on the same offense only if there was manifest necessity for the mistrial. *See United States v. Dinitz,* 424 U.S. 600, 606–07, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); *Vazquez v. Scully,* 694 F.Supp. 1094 (S.D.N.Y.1988).

b. Rationale for Mistrial Standards Exists in Non–Submission Scenario

Where a judge's decision not to submit a charge is not an acquittal or an adjudication of the facts, a mistrial and non-submission of charges implicate similar double jeopardy concerns. In both cases, a defendant's trial ends before resolution of the merits, which raises the possibility of a retrial. While in each scenario a defendant may welcome a judge's decision to abort an ongoing proceeding, other defendants may understandably crave resolution of the charges in the current proceeding, without further emotional and financial strain or the ongoing stigma attached to being under indictment. Accordingly, a defendant who objects to non-submission of a charge opts for final resolution today in the current trial. By such objection, a defendant precludes a retrial absent manifest necessity for not submitting the count. On the other hand, a defendant who consents to non-submission of a count gambles that the state will either not initiate a retrial or that a second trial will prove more favorable than the current proceeding. In such a scenario, a defendant accepts the burdens associated with a retrial unless the prosecution or the court acted in bad faith to obtain defendant's consent.

While it may seem anomalous to require a defendant to object to a dismissal of a count in order to invoke the higher protection against retrial afforded by the manifest necessity standard, New York law creates this bizarre situation. Under CPL § 300.40(7), where a judge decides not to submit counts to a jury, those counts are deemed dismissed; where, however, the prosecution objects to the non-submission of a count, the dismissal is treated as a trial order of dismissal. *See* CPL § 300.40(7). New York defines a trial order of dismissal as a dismissal due to insufficient evidence, which bars retrial. *See* CPL § 290.10. Therefore, when a prosecutor does not object to non-submission of a count, a defendant must understand that under New York law, this non-submission is simply a dismissal, which may not be based on the merits and which thus may not bar retrial.[6] Accordingly, a defendant who wishes finally to resolve a non-submitted charge in the current proceeding

---

**6.** Pursuant to *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), a federal court should defer adjudication of state law issues to give state courts an opportunity to decide whether an allegedly unconstitutional state practice was authorized by an ambiguous state law. Either the legislature or the courts of the State of New York must determine the meaning of a dismissal pursuant to Criminal Procedure Law § 300.40(7). Accordingly, this Court has not attempted to determine whether any result automatically flows from, or any meaning automatically attaches to, a dismissal pursuant to CPL §§ 300.40(6)–(7). *See Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Duncan v. Tennessee,* 405 U.S. 127, 92 S.Ct. 785, 31 L.Ed.2d 86 (1972). Instead, after examining the circumstances surrounding the trial court's decision not to submit the weapons counts to the jury, this Court has concluded that the non-submission decision was not an acquittal or a decision on the merits. *See supra* at 894–95.

should object to the judge's decision in order to invoke the manifest necessity standard should the issue of a retrial arise.

Requiring a defendant to object to non-submission of a count to a jury is no more strange than requiring a defendant to object to a mistrial. In both cases, a defendant avoids, at least temporarily, prosecution of part or all of the case. Nevertheless, in each case, retrial may be appropriate. A defendant's objection, therefore, is based not on the dismissal of the count or, in the case of a mistrial, on the termination of proceedings, but on the transitory nature of that dismissal or termination.[7]

It is worth noting that under the rule formulated in this Opinion, section 470.-55(1) may, in certain circumstances, produce a result that violates the double jeopardy clause of the Fifth Amendment. As previously noted, section 470.55(1) permits the State to retry a defendant on dismissed counts *except* where the dismissal is an acquittal or may be deemed an acquittal. This exception is obviously an attempt to align the statute with the double jeopardy clause by prohibiting retrial after a decision on the merits. Nevertheless, this exception does not address all double jeopardy concerns. It appears to this Court that section 470.55(1) permits the State to retry a defendant where a judge "dismisses" a count, by not submitting it to the jury over defendant's objection, without requiring the state to show manifest necessity for the non-submission. In addition, section 470.55(1) seems to permit retrial where the judge's decision not to submit a count to a jury is based on prosecutorial or judicial bad faith. Either of these interpretations of section 470.55(1) would lead to a result that contravenes the Fifth Amendment.

Of course, this exact issue is not before this Court and, equally important, this Court has no desire to intrude on the right of state courts to interpret state statutes. Were this Court able to certify this question to the New York Court of Appeals, as a question of New York Law "for which there is no controlling precedent," it would gladly do so. *See* Rules of the New York's Court of Appeals § 500.17(a). Unfortunately, only courts of last resort or federal appellate courts may certify questions to the New York Court of Appeals. *See id.* Nevertheless, given the importance of a defendant's Fifth Amendment rights, this Court believes that it is appropriate at least to raise these federal constitutional concerns.

### 3. *Application of This Standard: Petitioner Consented to Non–Submission and No Bad Faith*

Because petitioner and his counsel, Mr. Edward M. Rappaport,[8] consented to Justice Warner's decision not to submit the weapons counts to the jury, the State may

7. The only other federal case that addresses the effect of a judge's decision not to submit a count under CPL section 300.40(6) is *Faux v. Jones,* 728 F.Supp. 903 (W.D.N.Y.1990). In *Faux,* the trial court dismissed 200 counts of a 340 count indictment for insufficient evidence. Of the remaining 140 counts, the court submitted only 14 to the jury as a representative sampling pursuant to CPL § 300.40(6). *See id.* at 905. The jury convicted petitioner on eight of the fourteen submitted counts, but the Appellate Division reversed the conviction. The State obtained a new indictment that contained 29 counts, 19 of which had not been submitted to the jury in the first trial. *See id.* Petitioner was convicted of all 29 counts. After appealing the conviction, petitioner sought a writ of habeas corpus on the ground that retrial on the counts not submitted to the jury in the first trial violated the double jeopardy clause of the United States Constitution. *See id.* at 906.

The court asked whether "despite the absence of ... finding an actual resolution of the con-

structively dismissed charges, reprosecution should have been barred." *Id.* at 908. The court concluded that the double jeopardy standard governing mistrials should control retrial issues involving non-submission of counts to a jury. *See id.* The court found, however, that there was manifest necessity for "not submitting more than a few representative counts to the jury and constructively dismissing the rest pursuant to CPL § 300.40." *id.* While it is unclear whether the *Faux* court would require a showing of manifest necessity if a defendant does not object to non-submission of counts, this Court concludes that a showing of manifest necessity is required in order to retry a defendant only upon defendant's objection to the non-submission.

8. Mr. Rappaport subsequently became a New York Supreme Court Justice, and this Opinion will refer to him as Justice Rappaport.

retry petitioner absent judicial or prosecutorial bad faith. The trial transcript reveals that petitioner's counsel consented to the non-submission. In discussing the judge's charge, the following colloquy occurred:

Court: Do you want to know the charge that I am submitting?

Prosecution: Yes.

Court: Murder 2, Man 1, Man 2, Criminally Negligent Homicide

\*    \*    \*    \*    \*    \*

Defense Counsel ("DC"): Are you going to submit any lesser included gun charge?

Court: No.

DC: It's my—

Court: I just gave you what I am submitting.

DC: You're submitting [the gun count]?

Court: No, I'm not.

DC: Not at all?

Court: No.

DC: The guns are not going to the jury at all?

Court: No.

DC: In other words, if they should find him not guilty of all four homicides that's the end of the case?

Court: Yes.

DC: No guns?

Court: No.

DC: I don't have to get involved with a gun discussion. All right.

Court: You don't have a separate position.

DC: I understand that. That is why I didn't request it in my charge—in my request.

Court: Anything else?

DC: Can we talk about scheduling a little bit, Judge?

Trial Transcript at 774–75. This record reflects that petitioner's counsel understood that the judge would not submit the gun charge to the jury.

Moreover, despite such comprehension, petitioner's defense counsel failed to register an objection to the trial court's decision. At the hearing before this Court, defense counsel admitted that he did not object to non-submission of the counts. *See* Dec. 5, 1991 hearing at 6, 9–10. At the December 5 hearing, Justice Rappaport stated that:

Judge, the fact of the matter is that I believe the law of the State of New York, if this judge wanted not to send these counts, that it was deemed dismissed, which was the very thing I was asking him to do. I moved to dismiss the third count. Now he's not sending it to the jury. He denies my motion by not sending it. And the statute is clear that if he doesn't send it, it's going to be dismissed. I have to be an idiot to object.

Dec. 5, 1991 Hearing at 18; *see also* Dec. 5 Hearing at 12. While petitioner may not have solicited non-submission of the charge, petitioner and his counsel certainly acquiesced in the judge's decision.[9]

While this Court believes that Justice Rappaport expressly consented to non-submission of the counts, in appropriate situations courts have implied consent after examining "the totality of the circumstances." *United States v. Goldstein,* 479 F.2d 1061, 1067 (2d Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973). For instance, courts will imply consent when a defendant fails to object to a judge's decision after having an opportunity to register an objection. *See Camden v. Circuit Court of Second Judicial Circuit,* 892 F.2d 610 (7th Cir.1989), *cert. denied sub nom., Camden v. Circuit Court of Crawford County,* 495 U.S. 921, 110 S.Ct.

**9.** Furthermore, defense counsel's consent to non-submission of counts is valid and effective even if given in the erroneous belief that the State could not retry petitioner. At the December 5 hearing, Justice Rappaport stated that he believed that the double jeopardy clause barred a retrial on the counts "dismissed" under CPL § 300.40. *See* Dec. 5 hearing at 30–31. It is possible that based on this belief, defense coun-

sel did not object to non-submission of the counts, and indeed, it is apparent that he even consented to it. Nevertheless, this Court has decided that non-submission does not bar retrial in this case. Defense counsel's erroneous interpretation of New York statutory and United States constitutional law does not vitiate petitioner's consent.

1954, 109 L.Ed.2d 316 (1990); *United States v. Smith,* 621 F.2d 350, 352 (9th Cir.1980); *United States v. Gentile,* 525 F.2d 252, 255 (2d Cir.1975), *cert. denied,* 425 U.S. 903, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976). *Compare United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (no consent where defendant had no opportunity to object); *United States v. Bates,* 917 F.2d 388 (9th Cir.1990) (no consent where after declaring mistrial, court refused counsel's request to be heard); *United States v. Ramirez,* 884 F.2d 1524, 1529 (1st Cir.1989) (no implied consent where defendant not given opportunity to object to mistrial); *United States v. Kwang Fu Peng,* 766 F.2d 82 (2d Cir.1985) (no implied consent where defendant withdrew motion for mistrial).

Justice Rappaport obviously understood that Justice Warner had decided not to send the gun counts to the jury. The trial transcript reveals that defense counsel repeatedly sought to clarify what counts Justice Warner would send to the jury and that Justice Rappaport fully understood Justice Warner's decision. *See* Trial Transcript at 770–79 (*reprinted supra* at 19–20). He could have objected to non-submission at this time. He testified before this Court, however, that he chose not to record an objection. *See* Dec. 5 Hearing at 18, 32, 38. Accordingly, this Court may imply that defense counsel consented to the non-submission decision. Of course, because this Court finds that defense counsel expressly consented to non-submission of the counts, it has no need to resort to an implied consent theory.

Because petitioner consented to non-submission of the weapons counts, retrial is appropriate without requiring the State to show manifest necessity for Justice Warner's decision not to submit the gun counts to the jury. The State may retry petitioner on the gun charges unless the prosecution or the court acted in bad faith to obtain petitioner's consent. Petitioner has not presented, nor does it appear to this Court there exists, any evidence of bad faith. Petitioner's reprosecution on weapons charges, therefore, does not violate the double jeopardy clause of the United States Constitution.

### CONCLUSION

Accordingly, the petition for a writ of habeas corpus is denied.

SO ORDERED.